IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 10, 2001

## STATE OF TENNESSEE v. C. CURTIS BROWN

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-21984     Bernie Weinman, Judge**

_____

### No. W1999-01933-CCA-R3-CD - Filed March 14, 2001

_____

The defendant, after having his authority to write bonds in the 30th Judicial District revoked, appeals the trial court's decision and asserts that there was insufficient evidence to support the trial court's findings. Furthermore, the defendant asserts that the trial court's action was excessive. After review, we affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Gerald S. Green, Memphis, Tennessee, for the appellant, C. Curtis Brown.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Kenneth Roach, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On September 30, 1999, the State petitioned the Criminal Court of Shelby County to order the defendant, C. Curtis Brown, to show cause why his authority to write bonds should not be cancelled. The defendant was ordered to appear before the court on October 14, 1999 for a hearing on the matter. At the conclusion of the hearing, the court took the case on advisement. On November 22, 1999, the Criminal Court of Shelby County entered an order finding the defendant in violation of Tennessee Code Annotated section 40-11-126(6) and revoked his authority to write bonds in the 30th Judicial District. The defendant filed a timely appeal and his appeal is now before this Court.

The defendant asserts that the trial court lacked sufficient evidence to support its finding him in violation of Tennessee Code Annotated section 40-11-126(6) and revoking his authority to write

bonds in the 30th Judicial District of Tennessee. Furthermore, the defendant asserts that the trial court's revocation of his authority was excessive. After review, we affirm the trial court in all respects.

**Facts**

At the October 14, 1999 hearing, Mr. Ray Johnson, a security guard, testified that he was working outside the 24-hour clerk's office on September 22, 1999. He overheard a conversation between the defendant and a young lady standing in the corridor outside the office. He said he saw the defendant approach the young lady and ask her if she needed a bondsman and handed her a business card. He overheard Mr. Rubin, another security guard, ask the defendant who he was working for and the defendant replied, "Ms. Ruby Hale."

Next, Mr. Larry King, Vice-President of Memphis Bonding Company, testified that Memphis Bonding Company terminated the defendant's employment on August 23, 1999. He said the defendant later asked to be re-hired but the company refused to rehire him. Mr. King introduced a copy of Memphis Bonding's payroll record, which indicated the last payment to the defendant from Memphis Bonding was on August 6, 1999. He also introduced a memorandum from the Honorable James C. Beasley, Jr., an administrative judge, dated August 13, 1999. The memorandum warned bonding agents that the court would consider it improper for bonding agents to solicit business outside the 24-hour clerk's office. Mr. King said the defendant was aware of this memorandum and had signed it.

Next, Ms. Leah Collins, a bookkeeper for Memphis Bonding, testified that the defendant was fired on August 23, 1999. She said that all bond powers issued to him were returned to Memphis Bonding Company.

The defendant testified on his own behalf. He said that Marlo Pride approached him on September 21, 1999, about making a bond for two of Marlo's friends. The defendant then spoke with one of the men's girlfriends, Danielle Nelson, on September 23, 1999. The defendant claimed that Ms. Nelson was the lady to whom Mr. Johnson testified about being with the defendant. The defendant claimed that Mr. Johnson was mistaken in his testimony that the defendant asked her if she needed a bondsman and handed her a card. The defendant said that he spoke with Ms. Nelson in the lower level of the jail and that he never handed her a business card nor solicited her business. However, Mr. Johnson never identified Ms. Nelson as being the lady to whom the defendant talked or handed a card. The defendant admitted that he had been fired from Memphis Bonding Company, had turned in his bonding powers sometime in August, and did not have authority to write for any other bonding company. However, the defendant maintained that he still had the authority to write bonds.

Finally, Ms. Danielle Nelson testified that the defendant assisted her in acquiring the money necessary to put up a bond for her boyfriend. She said the defendant did not solicit her business nor did he hand her a business card.

After taking the case on advisement, the Criminal Court of Shelby County found the defendant in violation of Tennessee Code Annotated section 40-11-126(6) and revoked his authority to write bonds in the 30th Judicial District. The defendant's appeal is timely before this Court.

## Analysis

The defendant first asserts that there was insufficient evidence to revoke his authority pursuant to Tennessee Code Annotated section 40-11-125 by finding him in violation of Tennessee Code Annotated section 40-11-126(6). Specifically, the defendant's entire argument section of his brief on this issue is as follows:

> The evidence against the appellant below was highly impeachable and biased. The appellant could produce the allegedly solicited customer who would testify that there was no solicitation by the appellant.

A court may withdraw a bondsman's authority to write bonds pursuant to Tennessee Code Annotated section 40-11-125, which provides:

> [A]pproval of a professional bondsman or other surety may be withheld, withdrawn, or suspended by any court if, after investigation, it appears that a bondsman . . .
> (3) Is guilty of professional misconduct as described in § 40-11-126.

Furthermore, Tennessee Code Annotated section 40-11-126(6) provides:

> [T]he following is deemed unprofessional conduct, and no bondsman or surety agent shall: . . .
> (6) solicit business in any place where prisoners are confined.

At the hearing, Mr. Johnson testified that he witnessed the defendant approach a young lady outside the Shelby County Justice Complex, ask her if she needed a bondsman, and handed her a card. He also testified that he asked the defendant who he was writing bonds for and he replied, "Ms. Ruby Hale." The defendant's employer also testified at the hearing and stated that the defendant signed a memo that stated that soliciting business outside the Justice Complex was improper. The employer also testified that the defendant had been fired and had no authority to write any bonds. The defendant testified on his own behalf and asserted that the lady Mr. Johnson saw him talking to had contacted him in order to obtain a bond for someone else. The defendant also claimed that at the time he was talking to the lady, he still had authority to write bonds. After taking the case on advisement, the Shelby County Criminal Court found the defendant in violation of Tennessee Code Annotated section 40-11-126(6), and revoked his bonding authority in the 30th Judicial District.

In reviewing the defendant's assertions, the defendant does not cite to the record, does not cite to any authority, nor does the defendant articulate how the evidence against him was insufficient

to support the trial court's determination. After review of the record, we find no basis for the defendant's conclusory assertions and sufficient evidence to support the trial court's findings.

Next, the defendant asserts that the trial court's order revoking his authority to write bonds was excessive. In support of his argument, the defendant simply cites to the Eighth Amendment of the Constitution of the United States, the Magna Carta, and Article I, Section 8 of the Tennessee Constitution, arguing that by revoking his authority to write bonds, the trial court deprived him of his livelihood.

The trial court clearly had jurisdiction to revoke the defendant's authority to write bonds after an investigation and a hearing. See Tenn. Code Ann. § 40-11-125. The defendant asserts that the court's action was the equivalent of unconstitutionally excessive punishment. However, the defendant cites no authority for this particular position nor does he articulate how this action was excessive. In fact, the defendant received no jail time, no fine, no probation, nor any other type of alternative sentence. The defendant simply had his authority to write bonds revoked. The defendant was given a hearing on this matter and the trial court clearly acted within its authority by revoking the defendant's authority to write bonds. After reviewing the record, we find that the trial court's actions did not violate the defendant's constitutional rights. Therefore, we affirm the trial court in all respects.

## **Conclusion**

After review, we find that the trial court had sufficient evidence before it upon which to base its conclusions. Furthermore, we find the trial court's revocation of the defendant's authority to write bonds was not unconstitutionally excessive. We affirm the trial court in all respects.

_____
JOHN EVERETT WILLIAMS, JUDGE